[Civ. No. 38081. First Dist., Div. Three. June 16, 1976.]

JOHN J. BOZZO et al., Plaintiffs and Appellants, v.
BRUCE M. JACOBS, as Executor, etc., et al., Defendants and Respondents.

**COUNSEL**

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka and Ann M. Ravel for Plaintiffs and Appellants.

Coughlin, Wyckoff, Parker & Paxton and James M. Paxton for Defendants and Respondents.

## Opinion

**EMERSON, J.\***—Plaintiffs John J. Bozzo and Mary R. Bozzo appeal from a judgment of dismissal entered after an order sustaining defendants' demurrer without leave to amend. Although the complaint does not expressly so state, the action appears to be one for money (quantum meruit) based upon an oral life care contract made between plaintiffs and Jessie A. Heiner (hereafter the decedent). The parties and the court below have adopted this theory of the action.

The general demurrer was sustained on the ground that the life care contract was illegal in that plaintiffs had not complied with the provisions of Welfare and Institutions Code section 16300.[1] That section was not in existence at the time when the contract was entered into; a similar section was then numbered 2350. As pertinent hereto, there is no significant difference between the two sections and, like the parties, we shall direct our discussion to section 16300, which reads as follows:

"Any organization or person may receive transfers of property from an aged person, conditioned upon an agreement to furnish life care or care for a period of more than one year, which agreement may include the cash payment of personal and incidental expenses to the transferor or his nominee; provided, such organization or person has received a written license pursuant to Chapter 2 (commencing with Section 1250) of, or Chapter 3 (commencing with Section 1500) of, Division 2 of the Health and Safety Code, and such organization or person has been granted a certificate of authority by the department.

"Organizations or persons who furnish care exclusively under agreements, which may be canceled by either party without cause, are required to obtain a certificate of authority from the department for all agreements issued after October 1, 1957, if payment or transfer of property is made in advance to cover cost of care for one year or more; provided, however, that, if any such organization or person is a nonprofit benevolent organization, which accepts property in an amount less than the cost of care, the amount of reserve required of it under Section 16304 shall be reduced in the same proportion as the estimated cost of care

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]All code sections referred to are of the Welfare and Institutions Code.

bears to the value of the property transferred." For reference, we footnote former section 2350.[2]

At some point in the year 1957, decedent and her husband, Nat, approached plaintiffs, whom they had known for many years, and asked them to assist in the care of the Heiners and their property. At this time decedent was approximately 60 years of age and her husband was about 80. Plaintiffs agreed to undertake these duties, in exchange for which the Heiners promised that each would will to plaintiffs all the property remaining in the estate of the last of them to die. Thereafter, from 1957 until Jessie's death in 1973, plaintiffs performed various services for the Heiners. They visited their home several times a week, brought them groceries and medicine, tended the yard, and made household repairs. They transported the Heiners to the hospital, using their own automobile.

Nat Heiner died in August 1972, leaving all his property to his wife. Jessie Heiner died on December 4, 1973, leaving a last will and testament by which her property was bequeathed to defendants Bertha Merckens, Barbara Horning, Tabitha Home, and Wheeler Hospital Association. Plaintiffs were not named in the will. On May 29, 1974, plaintiffs presented their claim against the estate of Jessie Heiner, declaring that the value of their services was $25,000; the claim was rejected on June 7, 1974.

The primary issue raised on this appeal concerns the applicability of the life care contract requirements contained in the Welfare and Institutions Code to a contract involving a promise to leave property by will. Sections 16300-16318 of the Welfare and Institutions Code set forth a comprehensive scheme for the supervision of life care contracts. Section 16300 provides that any organization or person may receive transfers of property from an aged person under a life care agreement only if such organization or person has received a written license and

---

[2]"2350. Any organization or person may receive transfers of property from an aged person conditioned upon an agreement to furnish life care or care for a period of more than one year, which may include the cash payment of personal and incidental expenses, to the transferor or his nominee; provided, such organization or person has received a written license or permit pursuant to Section 2300 or 5700 of this code or Chapter 2 of Division 2 of the Health and Safety Code and such organization or person has been granted a certificate of authority by the State Department of Social Welfare.

Organizations or persons who furnish care exclusively under agreements which may be canceled by either party without cause are not required to obtain a certificate of authority from the State Department of Social Welfare." (Stats. 1955, ch. 1370, § 1, p. 2464.)

certificate of authority. The sections following section 16300 deal with such matters as reserve funds, refunds, inspections, audits, and the filing of required documents. Section 16316 provides that any person who enters into an agreement for the transfer of property conditioned upon an agreement to furnish life care, without having first secured a certificate of authority, is guilty of a misdemeanor.

Plaintiffs assert that the application of section 16300 is confined to transfers of property or payments made in advance by the aged person as a condition precedent to the furnishing of life care. It is urged that, since the agreement contemplated only a future transfer of property, the statutory provisions are inapplicable. Defendants, on the other hand, contend that the provisions were intended to apply to all life care contracts, whether prepaid or not.

Section 16300 was originally enacted in 1939 as Welfare and Institutions Code section 2350 (Stats. 1939, ch. 475, § 1, p. 1823). Initially, the statute applied only to institutional life care contracts, but in 1953 it was amended to include agreements by individuals as well as institutions (Stats. 1953, ch. 1488, § 1, p. 3099). The Supreme Court, in discussing the effect of the 1953 amendment, indicated that the legislation dealt with prepaid life care. (*Stenger* v. *Anderson* (1967) 66 Cal.2d 970, 972, 974, 976 [59 Cal.Rptr. 844, 429 P.2d 164].) That case involved an agreement whereby an elderly woman executed a joint tenancy deed to her home in exchange for the promise of life care. The execution of the deed was held to be a transfer of property within the meaning of the code (*id.,* at p. 977).

The language of section 16300 is limited on its face to present transfers of property and to transfers or payments made in advance to cover the cost of care for one or more years. The sections following suggest that chapter 4 (encompassing §§ 16300 and 16318, entitled "Supervision of Life Care Contracts") was intended primarily to deal with prepaid care for the aged. Sections 16301, 16306, 16307, and 16316 refer to the elderly person as a *"transferor."* It is clear from the facts of the instant case that neither decedent nor her husband was ever a transferor. The sections following section 16300 also deal with necessary performance bonds, sureties, and reserves; such provisions are necessary to protect the investment of the aged person. No investment was involved in the present case. The only reference to possible future payments is contained in section 16307, which in specifying the contents of the agreement, provides that the agreement must show "the value of all property

transferred, including, but not limited to, donations, subscriptions, fees, and any other amounts paid or payable by or on behalf of the aged person." Taken in context, however, it appears that this provision refers to partially prepaid care contracts; the chapter by its terms applies to both life care contracts and continuing care contracts. (See § 16300.1.)

In addition to the statutory language itself, support for plaintiffs' position is also found in a report issued by the Assembly Interim Committee on Social Welfare (Assem. Interim Com. on Social Welfare, 19 Assem. Interim Com. Rep. (1955-1957), No. 3, Life Care Contracts, 3 Appendix to Assem. J. (1957 Reg. Sess.)). In considering certain amendments to sections 2350-2360 (now § 16300 et seq.), the committee clearly viewed the legislation as an attempt to alleviate the possibility of abuse inherent in *prepaid* life care contracts: "Property valued at as much as $40,000 to $50,000 is transferred by elderly persons *as prepayment for life care.* Recently there has been an increase in the number and variety of these 'life care contracts,' *which constitute a kind of annuity insurance.*" (*Supra,* at p. 7; italics added.)

The findings and recommendations of the Interim Committee on Social Welfare stress that "effective supervision of required financial reserves [is] essential to the protection of the purchasers and sellers of life care, and of the taxpayers who must support *elderly citizens whose life savings may be lost* if contracts are not fulfilled." (*Id.,* at p. 7; italics added.) One of the key findings of the committee was that: "1. Elderly persons who *transfer their property as advance payment* for life care are not completely protected under present law and departmental operating policies" (*id.* at p. 7; italics added); and the committee's corresponding recommendation was that: "All contracts for care *in which payment is made a year or more in advance* should be supervised by the state department . . . [now the Department of Health]." (*Id.,* at p. 7; italics added.)

■ The intended purpose of section 16300 et seq. is to thwart the abuse which can occur when elderly people improvidently pay money or transfer property in exchange for the promise of future care, which may or may not be forthcoming. ■ Since plaintiffs in the instant case were not to be "paid," i.e., have the decedent's property transferred to them, until after they had completed the "care" agreement, there is no possibility of this type of abuse. We conclude that section 16300 does not apply to an agreement to leave property by will.

■ Defendants make the further claim that plaintiffs have no cause of action against the beneficiaries of decedent's will. This point is well taken and, the demurrer being general, it was properly sustained as to those defendants. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) One who sues in quantum meruit to recover the reasonable value of services rendered to a decedent in his lifetime, in reliance upon an oral agreement to compensate by will, must necessarily proceed on the theory that he is a creditor of the decedent, having a claim against the estate. Hence the proper party defendant in such an action is the representative of the estate; the heirs or beneficiaries are not necessary parties. (*Murdock* v. *Swanson* (1948) 85 Cal.App.2d 380, 388 [193 P.2d 81]; see generally 25 Cal.Jur.3d, Decedents' Estates, § 644, pp. 89-91.) The proper defendant in the instant case is Bruce M. Jacobs, as executor of the will of Jessie A. Heiner, and judgment of dismissal was properly entered as to Wheeler Hospital Association, Bertha Merckens, Barbara Horning, and Tabitha Home, the beneficiaries under the will.

The judgment in favor of the defendant executor is reversed, with directions to the trial court to overrule the demurrer. As to the defendants, the beneficiaries of decedent's will, the judgment is affirmed. Plaintiffs shall recover costs on appeal from defendant executor. Defendant beneficiaries shall recover costs on appeal from plaintiffs.

Brown (H. C.), J., concurred.

**DRAPER, P. J.**—I concur. If the action were for specific performance, a problem would exist. But there is no reason to deny plaintiffs the reasonable value of the services they rendered, under the circumstances here pleaded.